## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ANTHONY LOURENCO,

       Plaintiff,

v.

KILOLO KIJAKAZI,
Commissioner of Social Security,

       Defendant.

Civil Action No. 21-06732 (FLW)

**OPINION**

**WOLFSON, Chief Judge:**

Anthony Lourenco ("Plaintiff") appeals from the final decision of the Commissioner of Social Security, Kilolo Kijakazi ("Defendant"), denying Plaintiff's application for disability benefits under Title II of the Social Security Act (the "Act"). After reviewing the Administrative Record ("A.R."), the Court finds that the Administrative Law Judge's ("ALJ") decision was based on substantial evidence, and accordingly, the ALJ's decision is **AFFIRMED**.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, born on April 26, 1980, was 37 years old on his alleged disability date of July 10, 2017. (A.R. 56, 112.) On February 6, 2018, Plaintiff filed a Title II application for a period of disability, alleging disability due to major depression disorder, bipolar disorder, anxiety, and insomnia. (A.R. 47, 113.) Plaintiff also filed a Title XVI application for supplemental security income on March 12, 2018. (A.R. 47.) These claims were denied initially on July 26, 2018, and upon reconsideration on January 30, 2019. (*Id.*) Plaintiff then filed a written request for a hearing, which was held on February 28, 2020. (*Id.*) On April 1, 2020, the ALJ determined that Plaintiff was not disabled under the relevant statutes. (A.R. 57.)

Following the ALJ's decision, Plaintiff requested review of the ALJ's decision by the Appeals Council. (A.R. 1.) Plaintiff also asked the Appeals Council to review treatment notes from both prior to and after the decision that had not been submitted to the ALJ for review before the close of evidence.[1] (A.R. 1-2.) On January 29, 2021, the Appeals Council denied review on both fronts. (A.R. 2.) As to the new evidence, first, regarding the treatment notes pre-dating the ALJ decision, the Appeals Council determined that these notes did not show a reasonable probability of changing the outcome of the decision. (A.R. 2.) Second, as to the notes created after April 1, 2020, the Appeals Council stated that this evidence did not relate to the period at issue, and therefore, they did not affect the decision about whether Plaintiff was disabled. (A.R. 2.) The Appeals Council also denied review of the ALJ decision, finding Plaintiff's asserted reasons for appeal did not provide a basis for reviewing the ALJ's decision. (A.R. 1.) This appeal ensued.

**A. Review of Medical Evidence**

    **i.    Medical Records**

Plaintiff was hospitalized at Jersey Shore University Medical Center from October 17, 2015, to October 19, 2015, with complications from substance abuse, including severe depression and suicidal ideation. (A.R. 52, 891.) In the hospital, Plaintiff stated that he took alcohol and Xanax that night. (A.R. 891.) Further, the hospitalization report stated that Plaintiff felt overwhelmed by withdrawal symptoms, was feeling suicidal, and was a recovering heroin user. (A.R. 52.) Plaintiff was diagnosed with depressive disorder, mixed personality disorder with narcissistic features, and opiate and benzodiazepine use disorder. (*Id.*)

---

[1] Specifically, Plaintiff submitted treatment notes from: (1) Rutgers University Behavioral Health, 3/14/2020 to 4/30/2020 (A.R. 25-43); (2) Alexander Drakh, D.O., 9/21/2020 (A.R. 18-20); (3) Hackensack Meridian Health, 8/13/2020 to 11/11/2020. (A.R. 8-17, 21-22.)

Plaintiff was admitted to the Discovery Institute of Addictive Disorders facility on September 16, 2017, and discharged on September 29, 2017. (A.R. 620.) Plaintiff presented as moderately unstable regarding mental health issues. (*Id*.) The treatment notes state that Plaintiff struggled with emotional dysregulation and low distress tolerance, which would result in Plaintiff consistently becoming agitated and aggressive. (*Id*.) Plaintiff was diagnosed with severe alcohol use disorder, severe opioid use disorder, moderate cocaine use disorder, and bipolar disorder. (*Id*.) Plaintiff discharged himself prior to completion of treatment because of his inability to cope with his mental health issues. (*Id*.)

In October 2017, Plaintiff presented to Rutgers University Behavioral Health Care and was noted to have mood swings, racing thoughts, cravings to get high, hyperactivity, depression, and agitation. (A.R. 53, 470-77.) Plaintiff reported a history of self-injurious behavior, as well as physical and verbal aggression. (*Id*.) Furthermore, Plaintiff reported unstable housing and recent heroin use. (*Id*.) Plaintiff's treating physicians also noted depression, anxiety, irritability, mood swings, social isolation, panic attacks, low motivation, poor concentration, forgetfulness, and passive suicidal ideation. (A.R. 715.)

Plaintiff was discharged from Rutgers University Behavioral Health Care in December 2017 due to nonattendance. (A.R. 852.) The treatment notes also state that Plaintiff refused to provide urine samples for drug screening and attended treatment under the influence of substances. (*Id*.)

In June 2018, Plaintiff underwent a mental status examination with AnnaMarie Resnikoff, Ph.D. (A.R. 504-06.) Plaintiff stated that he abused heroin, marijuana, and cocaine from ages 22-25. (A.R. 505.) Plaintiff maintained that after that period, he stopped using heroin for eight years, but then began again. (*Id*.) Plaintiff reported that he was currently attending a partial

hospitalization program.  (A.R. 504.)  On examination, Plaintiff had a depressed mood and low energy, but was found to be pleasant, cooperative, and adequately groomed.  (A.R. 505.)  In addition, Plaintiff performed simple calculations and the serial sevens, he identified five common objects in the room and recalled four of the five after five minutes, his speech was clear, and he was fully oriented and alert with no evidence of a thought disorder.  (*Id.*)  Plaintiff denied suicidal thinking or intentions, as well as obsessions, compulsions, or hallucinations.  (*Id.*)  Dr. Resnikoff's diagnostic impression was that Plaintiff had an unspecified anxiety disorder and recurrent major depressive disorder.  (A.R. 506.)

In September 2018, Plaintiff's physicians at Rutgers reported that Plaintiff used heroin that day and refused substance abuse treatment.  (A.R. 558.)  Plaintiff reported use of alcohol and cannabis.  (A.R. 559.)  Plaintiff was also found to be argumentative and irritable, with periodic mania and hyperactive features, including being impulsive, aggressive, and disorganized.  (A.R. 559-71.)  Furthermore, Plaintiff had difficulty focusing and concentrating.  (*Id.*)  In October 2018, Plaintiff reported to be doing much better, and with medication compliance, was less irritable with less mood swings, better sleep, and less anxiety.  (A.R. 810-11.)  In early January 2019, Plaintiff reported an anxious mood, but a mental status examination was unremarkable.  (A.R. 817.)  Plaintiff had logical speech, intact thought process, and was fully oriented. (*Id.*)  Treatment notes state that his mood swings and depression were stable, and Plaintiff stated that he was not using drugs. (*Id.*)  In June 2019, Rutgers reported that Plaintiff stopped attending mental health treatment despite outreach attempts.  (A.R. 859.)

In October 2019, Plaintiff went to Brunswick Internal Medicine Group, PC, complaining of anxiety, chronic back pain, and chronic cough.  (A.R. 655.)  Plaintiff was diagnosed with acute

laryngopharyngitis and generalized anxiety disorder. (*Id.*) Plaintiff was given a refill of his Xanax and a refill of promethazine with codeine cough syrup. (*Id.*)

In November 2019, Plaintiff presented to doctors with increased mania, including being hyperverbal, decreased sleep, increased energy, difficulty focusing, and disorganized thinking. (A.R. 632-45.) Plaintiff expressed a willingness to attend group therapy, but refused other care. (A.R. 642.) The treating physician opined that Plaintiff had a poor prognosis based on his history of not attending treatment as recommended. (*Id.*) At a later November 2019 appointment, no complaints were reported other than a need for medication refills. (A.R. 653.) In December 2019, Plaintiff was treated for Hepatitis C, dysphoria, and back pain. (A.R. 646-50.) Plaintiff also reported then that he had not used heroin or cocaine for "a long time," nor had he used marijuana recently. (A.R. 650.) Plaintiff stated that he would drink once in a while when going out with his sister, but also noted that he sometimes takes more Xanax than he needed. (*Id.*) Plaintiff also stated that he had gained 90 pounds in the past three months. (*Id.*)

### ii.    Medical Opinion Evidence

On July 25, 2018, Jessy Sadvonik, Psy.D., a state agency medical consultant, reviewed Plaintiff's medical record at the initial level and found Plaintiff to be not disabled. (A.R. 124.) Dr. Sadvonik determined that Plaintiff had mild limitations in understanding, remembering, and applying information, and moderate limitations in interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself. (A.R. 118-19.) Specifically, as to Plaintiff's concentration and persistence limitations, Dr. Sadvonik opined that Plaintiff was moderately limited in his ability to perform activities on schedule with regular attendance, maintain attention and concentration for extended periods, and complete a normal workday or workweek without psychological interruptions. (A.R. 121-22.) But Dr. Sadvonik also found that

Plaintiff was not significantly limited in his ability to carry out simple or detailed instructions, sustain an ordinary routine without special supervision, work in coordination with or in proximity to others without distraction, or make simple work-related decisions. (A.R. 121-22.)  In terms of social interaction limitations, Dr. Sadvonik determined that Plaintiff was moderately limited in his ability to interact appropriately with the general public and ability to accept instructions and respond appropriately to criticism, but was not significantly limited in his ability to ask simple questions, get along with coworkers without distracting them, or maintain socially appropriate behavior and adhere to basic standards of neatness.  (A.R. 122.)   And regarding Plaintiff's adaptation limitations, Dr. Sadvonik stated that Plaintiff is moderately limited in his ability to respond to changes in the work setting and set realistic goals or make plans independently of others, but is not significantly limited in his ability to be aware of normal hazards or travel to unfamiliar places.  (A.R. 122-23.)

On January 23, 2019, on reconsideration, Dr. Cirilo Encarnacion affirmed Dr. Sadvonik's findings and also found Plaintiff to be not disabled.  (A.R. 157.)

Earlier in January 2019, Plaintiff also underwent a consultative examination with Francky Merlin, M.D., of Central Jersey Medical Evaluation.  (A.R. 590.)  At the examination, Plaintiff was noted to have dressed casually, was alert, and exhibited appropriate affect and behavior.  (A.R. 590-91.)  Plaintiff complained of neck and low back pain that had existed for 5 years.  (A.R. 590.)  Dr. Merlin stated that Plaintiff's pain was not associated with weakness or numbness in his upper extremities, and the lower back pain did not radiate to other areas.  (*Id*.)  Plaintiff also stated that he can walk two blocks and take care of his personal hygiene.  (*Id*.)

### B. Review of Testimonial Evidence

#### i.  Plaintiff's Testimony

At the beginning of the hearing, the ALJ admitted Plaintiffs' medical record and other exhibits, and asked Plaintiff's attorney if there were still outstanding exhibits.  (A.R. 66-67.) Plaintiff's attorney stated that he had requested updates from two health providers, and that if new records came in, he would file them, but he also noted that "I don't think we need to hold the record open." (A.R. 67.)

Plaintiff, first, testified that he was born on April 26, 1980, has a high school degree, and is presently living with his sister and niece.  (A.R. 70-71.)  Plaintiff explained that he is 6'2" and currently weighs 330 pounds, with a recent increase in weight largely due to his hepatitis medication.  (A.R. 71.)  Plaintiff noted that he is able to help with some housework, including cleaning rooms and washing dishes.  (A.R. 99-100.)  Plaintiff testified that he does not have a driver's license, which was suspended due to child support payment issues, and that he uses LogistiCare if he needs to go to medical appointments. (A.R. 71-72.)  Plaintiff currently receives food stamps and is on Medicaid.  (A.R. 72.)  Plaintiff also stated that he currently smokes half a pack of cigarettes a day, and drinks alcohol only on occasion.  (A.R. 72-73.)  Regarding his drug use, Plaintiff stated that, in the past, he has taken heroin, cocaine, ecstasy, and marijuana.  (A.R. 73-74.)  Plaintiff noted that he used to smoke marijuana every day and still does once in a while, but that he has not used heroin since he began attending a drug addiction clinic over a year and a half.  (A.R. 74, 76.)  The clinic gives him methadone.  (A.R. 75.)  Regarding cocaine, Plaintiff stated that he thought the last time he used it was around the time he started at the clinic, but that he had recently failed a drug test for cocaine, although he claims to not remember having used cocaine prior to the test.  (A.R. 75.)

Plaintiff testified that he had only been incarcerated overnight a few times for issues related to child support or warrants from unpaid traffic tickets, but he does not have a criminal record. (A.R. 76.)  Plaintiff also testified that he has never been married, and has three children.  (A.R. 76.)  As to his work history, Plaintiff stated that he has not worked since 2017, when he worked at a bakery cleaning the store, repairing machines, and conducting nighttime bread deliveries to customers.  (A.R. 77, 85-86.)  Plaintiff worked between 4-8 hours a day, and when necessary, he was able to lift 25 pounds.  (A.R. 78.)  Plaintiff also stated that he worked construction from 1999 to 2007.  (A.R. 78-79.)  As a construction worker, Plaintiff completed normal construction tasks, and assisted the plumbers, electricians, and roofers.  (A.R. 79-80.)  In 2006, Plaintiff worked at McDonalds for around 38 hours a week.  (A.R. 83-84.)  Plaintiff had also previously worked at his mother's salon as an assistant.  (A.R. 82.)  As an assistant, Plaintiff would sweep the floors, do basic repairs, and help with the plumbing.  (A.R. 83.)  Plaintiff testified that he and his mother were constantly fighting, and that his mother eventually fired him.  (A.R. 86.)

Plaintiff stated that he is trying to look for work, but that if he works for one day his back hurts for a few days and he has shooting pains in his legs.  (A.R. 90.)  Plaintiff claims that he feels this back pain every day, particularly when bending to pick things up.  (A.R. 92-93.)

As to mental impairments, Plaintiff testified that he is bipolar, depressed, and has anxiety. (A.R. 93.)  Plaintiff takes Xanax for anxiety, but he does not need to take it every day.  (*Id.*) Plaintiff also does not want to take Xanax as he finds it very addictive.  (*Id.*)  Regarding his bipolar disorder, Plaintiff stated that he has mood swings, and one moment he will feel fine and the next he will feel agitated and yell at his sister.  (*Id.*)  After these episodes, Plaintiff states that he needs to be alone in his room for the rest of the day.  (*Id.*)  Plaintiff also has manic and depressive episodes.  (*Id.*)  Plaintiff often gets depressed when his kids go home on Saturday nights, and it

lasts through Sunday or Monday. (A.R. 94-95.) When Plaintiff is depressed, his sister attempts to get him out of the house to do activities, but he never wants to join. (A.R. 101.) Plaintiff stated that he cannot control when these manic or depressive episodes occur. (A.R. 95.) As to his anxiety, Plaintiff testified that he constantly feels anxious. (*Id*.) When he is anxious, Plaintiff feels like everyone is out to get him, and as a result, he refrains from speaking to anyone. (A.R. 97.) Plaintiff also testified that his mood and anxiety issues cause him to have difficulty focusing and to be forgetful. (*Id*.)

ii.     **Vocational Expert's Testimony**

The Vocational Expert, Tanya Edghill ("VE"), began by classifying Plaintiff's past work as a maintenance worker, which has a DOT number of 381.687-018, and is performed at a medium exertion level with a specific vocational preparation ("SVP") of 2. (A.R. 103.) The VE testified that, on occasion, this was performed as a composite job that included hand packaging and driving. (*Id*.) The hand packager portion of the job has a DOT number of 920.587-018, and is performed at a medium exertion level with an SVP of 2, and the driver portion has a DOT number of 292.353-010 and is performed at a medium exertion level with an SVP of 3. (*Id*.) The VE noted that Plaintiff has completed beauty school and has a beauty license, which would be classified as a stylist. (*Id*.) A stylist has a DOT number 332.271-108, and is performed at a light exertion level with an SVP of 6. (*Id*.) The VE stated that Plaintiff also has past work as a construction worker, which has a DOT number 869.664-014 and is performed at a heavy exertion level with an SVP of 4. (*Id*.)

The ALJ then proceeded to ask the VE the following hypothetical:

[A]ssume a hypothetical individual of the same age and education as [Plaintiff], with the past work history you've just classified. Please further assume this hypothetical individual has no exertional limitations, but can have occasional exposure to humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme

9

cold, and extreme heat.  The individual would be able to understand, remember, and carry out simple instructions, with only occasional changes to essential job functions, would be able to make simple work-related decisions, can occasionally interact with supervisors and co-workers, but cannot work on a team or in tandem with co-workers . . . [a]nd could work in an environment where productivity is judged at the end of the day, rather than the middle of the day.  Could that hypothetical individual perform the past work?

(A.R. 105.) The VE replied that "[b]ecause the one simple job [Plaintiff] performed, as far as maintenance at the bakery, because you are dealing with cleaning supplies, I will err on the side of caution, and not suggest that that would be a job that the person could return to." (A.R. 106.) But, the VE did note that there were other work in the national economy for such a person, including (1) package sealer, which has a DOT number of 920.685-074 and is performed at a medium exertion level with an SVP of 2, (2) labeler, which has a DOT number of 920.687-126 and is performed at a light exertion level with an SVP of 2, and (3) table worker, which has a DOT number of 739.687-182 and is performed at a sedentary exertion level with an SVP of 2.  (A.R. 106.)

The ALJ then asked if that same hypothetical individual:

was able to lift, carry, push, and pull 10 pounds frequently, and 20 pounds occasionally, can sit for six hours, can stand and walk for six hours[,] . . . could occasionally climb ramps, stairs, ladders, ropes, and scaffolds, could occasionally balance, stoop, kneel, crouch, and crawl[,] could that hypothetical individual perform the work of the labeler and table worker?

(A.R. 106-07.)  The VE replied that this person could perform the work of labeler and table worker. (A.R. 107.)  The ALJ then asked if there would be any light or sedentary jobs for this individual.  (*Id*.)  The VE replied yes, and then explained that the job would be that of a garment folder, which has a DOT number of 789.687-066, with a light exertion level and an SVP of 2.  (*Id*.)  The ALJ then asked whether there would be work available if either individual from these hypothetical workers was off task for 15% or more of the workday or missed two or more days per month on a

consistent basis, to which the VE replied that such a person, in either scenario, would not be able to sustain employment. (*Id*.)

## C.  ALJ Decision

On April 1, 2020, the ALJ issued a written decision analyzing whether Plaintiff satisfied his burden to demonstrate disability using the standard five-step process. (A.R. 47-57.)  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of disability. (A.R. 49.)  At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, asthma, obesity, depression, bipolar disorder, anxiety disorder, substance use disorder. (A.R. 49.)  At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" in the relevant CFR. (A.R. 50.)  In so deciding, the ALJ considered listings 1.04, 3.03, 12.04, and 12.06. (A.R. 50-51.)

The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to perform light work, except Plaintiff can only occasionally climb ramps, stairs, ladders, ropes, and scaffolds, as well as occasionally balance, stoop, kneel, crouch, and crawl. (A.R. 51.)  Plaintiff can also have occasional exposure to humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold and extreme heat. (A.R. 51.)  Plaintiff is able to understand, remember, and carry out simple instructions with only occasional changes to essential job functions, and can make simple work-related decisions. (A.R. 51-52.)  Furthermore, Plaintiff can occasionally interact with supervisors and coworkers, but cannot work on a team or in tandem with others or interact with the public. (A.R. 52.)  Finally, Plaintiff is able to work in an environment where productivity is judged at the end of the day rather than the middle of the day. (A.R. 52.)

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work, including jobs as a maintenance worker, hair stylist, construction worker, or his composite job as a hand packager and driver.  (A.R. 56.)  At step five, the ALJ determined that given Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (A.R. 56.)

## II.   <u>STANDARD OF REVIEW</u>

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g); see *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001).  The Commissioner's decisions regarding questions of fact are deemed conclusive on a reviewing court if supported by "substantial evidence in the record." 42 U.S.C. § 405(g); see *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  While the court must examine the record in its entirety for purposes of determining whether the Commissioner's findings are supported by substantial evidence, *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978), the standard is highly deferential.  *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).  Indeed, "substantial evidence" is defined as "more than a mere scintilla," but less than a preponderance. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004).  "It means such relevant evidence as a reasonable mind might accept as adequate."  *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (internal quotations and citations omitted).  A reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder."  *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992), *cert. denied*, 507 U.S. 924 (1993).  Accordingly, even if there is contrary evidence in the record that would justify the opposite conclusion, the

Commissioner's decision will be upheld if it is supported by the evidence. *See Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).

Disability insurance benefits may not be paid under the Act unless Plaintiff first meets the statutory insured status requirements. See 42 U.S.C. § 423(c). Plaintiff must also demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." *Id.* § 423(d)(1)(A); *see Plummer*, 186 F.3d at 427. An individual is not disabled unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423(d)(2)(A). Eligibility for supplemental security income requires the same showing of disability. *Id.* § 1382c(a)(3)(A)-(B).

The Act establishes a five-step sequential process for evaluation by the ALJ to determine whether an individual is disabled. See 20 C.F.R. § 404.1520. First, the ALJ determines whether the claimant has shown that he or she is not currently engaged in "substantial gainful activity." *Id.* § 404.1520(a)(4)(i); see *Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *See id.* § 404.1520(b); *see also Bowen*, 482 U.S. at 140. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities. *Id.* § 404.1520(c); *see Bowen*, 482 U.S. at 146-47 n.5. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." *Id.* § 404.1522(b). These activities include

physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Id.* § 404.1522(b)(1).   A claimant who does not have a severe impairment is not considered disabled.   *Id.* at § 404.1520(c); *see Plummer*, 186 F.3d at 428.

Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Impairment List").   *Id.* § 404.1520(a)(4)(iii).   If the claimant demonstrates that his or her impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See id.* § 404.1520(d); *see also Bowen*, 482 U.S. at 146-47 n.5.   If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent.   *See id.* § 404.1526(a).   If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment.   Id. An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar.   *Williams*, 970 F.2d at 1186.   If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the RFC to perform his or her past relevant work.   20 C.F.R. § 404.1520(e); *Bowen*, 482 U.S. at 141.

If the claimant can perform past relevant work, the claimant is determined to not be disabled.   20 C.F.R. §§ 404.1520(e), 416.920(e); *Bowen*, 482 U.S. at 141-42.   The claimant bears the burden of demonstrating an inability to return to the past relevant work.   *Plummer*, 186 F.3d at 428.   Finally, if it is determined that the claimant is no longer able to perform his or her past relevant work, the burden of production then shifts to the Commissioner to show, at step five, that

the "claimant is able to perform work available in the national economy." *Bowen*, 482 U.S. at 146-47 n.5; *Plummer*, 186 F.3d at 428. This step requires the ALJ to consider the claimant's RFC, age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether the claimant can perform work and not disabled. *Id.*

## III.   PLAINTIFF'S CLAIMS ON APPEAL

First, Plaintiff argues that because the additional evidence he submitted to the Appeals Council is new and material, and there was good cause for not submitting the evidence prior to the close of evidence, the Appeals Council erred in denying review of the ALJ decision, and therefore, this matter must be remanded for consideration of that evidence. Second, Plaintiff asserts that the ALJ's finding at step two that Plaintiff's Hepatitis C diagnosis was not a "severe" impairment was not based on substantial evidence. Third, Plaintiff maintains that, at step three, the ALJ did not provide an adequate rationale for finding that Plaintiff's severe impairments, either individually or in combination, did not meet a relevant listing. Fourth, Plaintiff contends that the ALJ's RFC determination was not supported by substantial evidence. Fifth, and finally, Plaintiff argues that the ALJ's decision that there were alternative jobs in the national economy that Plaintiff could perform was also not based on substantial evidence.

### A.  The Appeals Council Properly Evaluated Plaintiff's Newly Submitted Evidence

Plaintiff asserts that this Court should remand this matter to the ALJ for consideration of his newly submitted evidence, which both pre-dates and post-dates the ALJ's decision related to his back problems and psychiatric treatment, because it is new, material, and there is good cause for not having timely submitted the evidence. Pl. Br. at 33-34. I disagree.

15

Notably, "[n]o statutory provision authorizes the district court to make a decision on the substantial evidence standard based on the new and material evidence never presented to the ALJ." *Matthews*, 239 F.3d at 594. In other words, "new evidence may not be considered by this Court[.]" *Andrade v. Comm'r of Soc. Sec.*, No. 18-14970, 2019 WL 4894540, at *2 (D.N.J. Oct. 4, 2019). Instead, when faced with new evidence not considered by the ALJ, so long as the claimant satisfies a three-prong test articulated in 42 U.S.C. § 405(g), district courts are authorized "to remand the case to the [ALJ] for consideration of [that] new evidence." *Andrade*, 2019 WL 4894540, at *2; *see Hamm v. Astrue*, No. 08-5010, 2009 WL 2222799, at *6 (D.N.J. July 22, 2009) ("[A] district court may order a 'new evidence' remand . . . if the claimant satisfies a three-prong test."); *see also Matthews*, 239 F.3d at 592 ("If the claimant proffers evidence in the district court that was not previously presented to the ALJ, then the district court may remand to the Commissioner but that disposition is governed by Sentence Six of § 405(g)."). The test requires the evidence to be (1) new and (2) material, and (3) there must be "good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *see Hamm*, 2009 WL 2222799, at *6.

Evidence is considered "new" if it was not in the record before the ALJ and is "not merely cumulative of what is already in the record." *Hamm*, 2009 WL 2222799, at *6 (quoting *Szubak v. Secretary of HHS*, 745 F.2d 831, 833 (3d Cir. 1984)). Evidence is "material" when it "relate[s] to the time period for which benefits were denied," *Szubak*, 745 F.2d at 833, and "there is a reasonable possibility that its introduction would have changed the ALJ's decision." *Pagan v. Comm'r of Soc. Sec.*, No. 17-769, 2018 WL 485667, at *5 (D.N.J. Jan. 18, 2018). Finally, "a finding of 'good cause' requires 'some justification for the failure to acquire and present such evidence to the Secretary.'" *Id.* at *6 (quoting *Szubak*, 745 F.2d at 834). Courts have noted that good cause is

necessary to ensure that claimants are "afforded only one fair opportunity to demonstrate eligibility for benefits under any one set of circumstances." *Szubak*, 745 F.2d at 834. Otherwise, claimants "might be tempted to withhold medical reports, or refrain from introducing all relevant evidence, with the idea of obtaining another bite at the apple," turning "the procedure into an informal, end-run method of appealing an adverse ruling by the Secretary." *Id*. (internal quotations and citation omitted); *Matthews*, 239 F.3d at 595 (3d Cir. 2001) ("If we were to order remand for each item of new and material evidence, we would open the door for claimants to withhold evidence from the ALJ in order to preserve a reason for remand").

As an initial matter, the treatment notes created *after* the ALJ's decision are not material. "An implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition." *Szubak*, 745 F.2d at 833. In light of this requirement, I agree with the Appeals Council, which stated that the ALJ "decided [Plaintiff's] case though April 1, 2020. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before April 1, 2020." (A.R. 2.) As such, I find that Plaintiff's treatment notes from Rutgers University Behavioral Health dated after April 1, 2020, as well as the treatment notes from Alexander Drakh, DO, and Hackensack Meridian Health, do not relate to the period for which benefits were denied, and therefore, are not material.

Regarding the Rutgers treatment notes from prior to and on April 1, 2020, even if the Court considered them to be new or material,[2] Plaintiff cannot demonstrate good cause for submitting

---

[2] Notably, Plaintiff failed to argue that these specific notes are new or material. Regardless, I find that they are neither. These notes are not new because they merely repeat Plaintiff's well-documented mental and physical health symptoms, and thus, they are cumulative. And in that

this evidence after the ALJ's decision. Plaintiff bears the burden of demonstrating good cause, but he has made no specific arguments or showing as to why there is good cause to consider these specific notes, and thus has not articulated any valid "justification for the failure to acquire and present [the treatment notes] to the secretary." *Pagan*, 2018 WL 485667, at *6; *see Szubak*, 745 F.2d at 833 ("Finally, the claimant must demonstrate good cause for not having incorporated the new evidence into the administrative record."). Indeed, at Plaintiff's hearing, the ALJ admitted Plaintiffs' medical record and other exhibits, and asked Plaintiff's attorney if there were still outstanding exhibits. (A.R. 66-67.) Plaintiff's attorney noted that he had requested updates from two health providers, and that if new records came in, counsel would file them, but then explicitly stated: "I don't think we need to hold the record open." (A.R. 67.) Plaintiff cannot voluntarily reject an opportunity to file records, and then seek to admit already-existing evidence after the close of evidence and an adverse decision against him. Allowing remand would be inconsistent with the Third Circuit's edict that Social Security claimants should be "afforded only one fair opportunity to demonstrate eligibility for benefits under any one set of circumstances." *Szubak*, 745 F.2d at 833. Such a policy ensures that "litigants do not withhold or delay obtaining and presenting evidence until after an unfavorable decision by the ALJ, thereby gaming the appeals process to receive a remand and new hearing." *Matos v. Kijakazi*, No. 21-02024, 2022 WL 1134995, *9 (D.N.J. April 18, 2022).

Furthermore, aside from Plaintiff's attorney's decision to close the record, Plaintiff presents no other justification for the late-submitted records. Although courts have not formulated a particular set of guideposts for what constitutes a valid justification for good cause, the Appeals

---

connection, because the notes are cumulative, it is unlikely that their introduction would have changed the ALJ's decision. Therefore, I find that they are not material either.

Council's regulations for deciding whether to grant review of new material, while not binding, are instructive. These regulations state that good cause for submitting new evidence may be shown because: "(1) Our action misled you; (2) You had a physical, mental, educational, or linguistic limitation(s) that prevented you from informing us about or submitting the evidence earlier; or (3) some other unusual, unexpected or unavoidable circumstance beyond your control prevented you from informing us about or submitting the evidence earlier." 20 C.F.R. § 404.970(a)(5). None of these factors appear to be present here. As such, good cause does not exist, I deny Plaintiff's request for remand to consider newly submitted evidence.

**B. The ALJ's Decision that Plaintiff's Hepatitis C was Non-Severe is Based on Substantial Evidence**

Plaintiff argues that the ALJ erred at step two in finding that Plaintiff's Hepatitis C was not a severe impairment. Specifically, Plaintiff maintains that the ALJ incorrectly found that Plaintiff's Hepatitis C was "being successfully treated," because Plaintiff's extreme weight gain from the Hepatitis medication was proof that his treatment was not successful and that the treatment contributed to decreased work-related functioning. Pl. Br. at 12-13. I disagree, and find that the ALJ's step two decision was based on substantial evidence.

At step two, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c); *see Bowen*, 482 U.S. at 146-47 n.5. "[A]n impairment is severe only if it significantly limits the claimant's physical or mental ability to do basic work activities." *Salles v. Comm'r of Soc. Sec.*, 229 Fed. App'x 140, 144 (3d Cir. 2007) (internal quotations omitted). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality or a combination of slight abnormalities which have no more than a minimal effect on an individual's ability to work."

*Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003) (internal quotations omitted). Notably, "[t]he claimant has the burden of showing that an impairment is severe." *Salles*, 229 Fed. App'x at 144.

Here, Plaintiff's argument is based on the unfounded statement that the ALJ determined that Plaintiff's Hepatitis was "being successfully treated." Rather, the ALJ appropriately explained that Plaintiff's Hepatitis C "was being managed medically, and should be amenable to proper control by adherence to recommended medical management and medication compliance." (A.R. 50.)   In addition, the ALJ noted that the record showed that "no aggressive treatment was recommended or anticipated for this condition." (*Id.*)

While this explanation, alone, is more than the mere scintilla of evidence needed to meet substantial evidence, Plaintiff also has not met his burden of showing that the Hepatitis C, *itself*, is a severe impairment. *See Salles*, 229 Fed. App'x at 144. Plaintiff presents no medical evidence that his Hepatitis C is causing a significant limitation in his ability to do certain work activities, but rather, merely points to the extreme weight gain caused by his Hepatitis C medication and claims that this is evidence that his Hepatitis C is not being managed. As an initial matter, Plaintiff's lay opinion does not qualify as medical evidence showing that Plaintiff's Hepatitis is a severe impairment. But, furthermore, the ALJ explicitly considered Plaintiff's weight gain at step two, finding, separately, that Plaintiff's obesity is a severe impairment. (A.R. 49.) Therefore, the ALJ clearly considered both the limiting effects of Plaintiff's Hepatitis C, as well as the limiting effects of the weight gain caused by Plaintiff's Hepatitis C medication. As such, the ALJ appropriately considered Plaintiff's Hepatitis C and provided an adequate explanation for finding it to be non-severe. For these reasons, I find that the ALJ's Hepatitis C determination at step two was based on substantial evidence.

### C. Substantial Evidence Supports the ALJ's Findings at Step Three

Plaintiff asserts that the ALJ failed to provide a sufficient rationale for finding that Plaintiff's impairments did not meet impairment listings 1.04, 12.04, or 12.06. Specifically, Plaintiff argues that the ALJ merely stated the elements of these listings without further analysis, which he contends is insufficient to meet the substantial evidence standard.

### i. The ALJ's 1.04 listing determination was based on substantial evidence.

At step three, the ALJ is required to consider each of Plaintiff's individual conditions in determining whether a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1 was satisfied. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). In addition, if Plaintiff has "a combination of impairments, no one of which meets a listing," the regulations required the ALJ to "compare [the claimant's] findings with" other potential "analogous listed impairments." 20 C.F.R. § 404.1526(b)(3). If a claimant is found to have a listed impairment or its equivalent, then he is considered disabled and the inquiry ends. *See Plummer*, 186 F.3d at 428.

In *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 120 n.2 (3d Cir. 2000), the Third Circuit made clear that an ALJ has a "duty to investigate the facts and develop the arguments both for and against granting benefits." There, the Third Circuit remanded the matter because the ALJ made only conclusory statements without mentioning any specific listed impairments or explaining his reasoning. *Id.* at 119-20. In *Jones v. Barnhart*, 364 F.3d 501 (3d Cir. 2004), the Third Circuit elaborated that, to satisfy *Burnett*, an ALJ is not required to "use particular language or adhere to a particular format in conducting his analysis." 364 F.3d at 505. Rather, the decision "read as a whole" must be capable of providing meaningful judicial review. *Id.*

Reading the decision as a whole, the ALJ's listing determinations were based on substantial evidence. The ALJ, first, stated that Plaintiff "does not have an impairment or combination of

21

impairments that meets or medically equals the severity of one of the listed impairments" in the

relevant CFR. (A.R. 50.) Then, as to listing 1.04, the ALJ stated that:

> The claimant's degenerative disc disease does not meet Listing 1.04 because the record does not demonstrate compromise of a nerve root (including the cauda equina) or the spinal cord with additional findings of: A) evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising; or B) spinal arachnoiditis; or C) lumbar spinal stenosis resulting in pseudoclaudication.

(*Id*.) In so finding, throughout the decision, the ALJ considered the objective medical evidence

related to Plaintiff's back. The ALJ noted that in July 2018, Plaintiff was treated in an emergency

room for back pain after he fell working in an asphalt truck. (A.R. 53.) At the visit, Plaintiff

complained that he had had three weeks of pain radiating into his legs bilaterally and paresthesia

in his lower left extremity. (*Id*.) The ALJ stated that imaging and x-rays of Plaintiff's back, then,

showed degenerative changes to his lumbar spine. (A.R. 53, 54.) The ALJ also noted that Plaintiff

complained of problems bending in October 2018 and chronic back pain in October 2019. (A.R.

54.) However, the ALJ also pointed to a consultative examination in January 2019 with Dr. Franky

Merlin, M.D., which found that Plaintiff had a normal gait and station, and could ambulate in the

exam room without an assistive device. (*Id*.) Furthermore, although Plaintiff had lumbar

tenderness, Dr. Merlin noted Plaintiff had full motor strength bilaterally and no difficulty getting

on or off the examining table. (A.R. 54, 591.) Dr. Merlin also stated that neither his neck pain nor

back pain radiated to other areas of his body or caused weakness, and Plaintiff did not take any

medication for his pain. (A.R. 590.) As such, it is clear the ALJ considered the relevant medical

evidence and found that the evidence did not meet listing 1.04.

As such, the ALJ's finding that listing 1.04 was not satisfied is based on substantial evidence.[3]

> ii. **The ALJ's consideration of listings 12.04 and 12.06 were also based on substantial evidence.**

The ALJ's consideration of the Paragraph B criteria under Listings 12.04 and 12.06 were also based on substantial evidence. The Paragraph B criteria are met when a claimant has an extreme limitation of one, or a marked limitation of two, of the following four mental functional areas: the ability to understand, remember, or apply information; the ability to interact with others; the ability to concentrate, persist, or maintain pace; and the ability to adapt or manage oneself. 20 C.F.R. Pt. 404, Subpt. P., App. 1, §§ 12.04, 12.06 (2017). Here, the ALJ found that Plaintiff's "mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06." (A.R. 50.) In making this determination, the ALJ "considered whether the 'paragraph B' criteria [were] satisfied." (*Id*.) The ALJ found that Plaintiff had mild limitations in understanding, remembering, or applying information, moderate limitations in his ability to concentrate, persist, or maintain pace, and ability to adapt or manage oneself, and marked limitations in interacting with others. (A.R. 51.)

Plaintiff argues that the ALJ failed to articulate an appropriate explanation for his finding on each limitation, and furthermore, chose a limitation level in each category that does not

---

[3] Plaintiff also argues, without explaining which evidence should have been considered, that the ALJ's 1.04 analysis was insufficient because it failed to discuss any evidence related to the effects of Plaintiff's obesity on the elements of that listing. Pl. Br. at 16. This is incorrect. Notably, the ALJ listed Plaintiff's obesity as severe, despite there being no physician that labeled Plaintiff's obesity as disabling. (A.R. 50.) Additionally, the ALJ explained that obesity in adults is no longer an impairment, but that the ALJ is required to consider obesity in determining whether Plaintiff's severe impairments meet a listing and in Plaintiff's RFC. (A.R. 50.) The ALJ then goes on to state that while Plaintiff's obesity was a severe impairment, "the signs, symptoms and laboratory findings of [his] obesity are not of such a severity as found in any listing." (A.R. 50.) Furthermore, later on, the ALJ considered Plaintiff's obesity, in combination with his asthma, in finding that Plaintiff could only perform light work. (A.R. 55.)

sufficiently match Plaintiff's symptoms. Pl. Br. at 16. In support, Plaintiff cherry picks certain evidence that he believes is contrary to the ALJ's Paragraph B findings, including Rutgers treatment notes describing various mental health symptoms.[4] I disagree, and find that the ALJ articulated valid reasons for his determinations.

As an initial matter, the Court is not "empowered to weigh the evidence or substitute [my] conclusions for those of the fact-finder." *Williams*, 970 F.2d at 1182. As such, even if there is evidence that is contrary on the record that would justify the opposite conclusion, the ALJ's decision will still be upheld if it is supported by substantial evidence. *Simmonds*, 807 F.2d at 58.

Considering this standard, the ALJ's Paragraph B determinations were based on substantial evidence. In finding that Plaintiff had mild limitations in understanding, remembering, or applying information, the ALJ considered Plaintiff's subjective statements that he had difficulty remembering and completing tasks, such as going to the doctor's office without reminders. (A.R. 51.) However, the ALJ explained the Plaintiff also stated that he was able to shop and live on his own. (*Id.*) The ALJ noted at one point that Plaintiff was living independently in a hotel while he was in the process from separating with his significant other. (A.R. 53.) Furthermore, in a psychological consultative examination, Plaintiff was able to perform simple mathematic calculations, perform the serial sevens, and recall four of five objects after a five-minute delay. (A.R. 51.) As to Plaintiff's moderate limitations in concentrating, persisting, or maintaining pace, the ALJ discussed Plaintiff's subjective complaints about concentrating, focusing, and completing tasks. (A.R. 51.) Furthermore, the ALJ noted that these complaints were confirmed by Plaintiff's various psychological evaluations. (A.R. 51.) The ALJ, throughout the opinion, also discussed the medical records documenting Plaintiff's intense mood swings and manic thought patterns, as

---

[4] Notably, the ALJ specifically considered these treatment notes in his Opinion. (A.R. 54.)

well as Plaintiffs' issues with focus and organization.  (A.R. 52-56.)  Despite these episodes, the ALJ noted that Plaintiff was able to live independently at times, go outside on his own, watch television, manage his money, and was able to cook and clean.  (A.R. 51, 53, 54.)  Furthermore, during various examinations, Plaintiff had intact concentration, attention, and memory.  (A.R. 53.) Regarding Plaintiff's moderate limitations in his ability to adapt or manage himself, the ALJ noted Plaintiff's complaints that he has difficulty dressing, bathing, and managing his mood.  (A.R. 51.) The ALJ further discussed Plaintiff's issues with emotional dysregulation, depression, and low distress tolerance, explaining that Plaintiff becomes agitated quickly.  (A.R. 53.)  The ALJ noted that Plaintiff had poor sleep habits and had difficulty with shaving and brushing his teeth.  (A.R. 53.)  However, the ALJ found that Plaintiff was able to live independently, attend a partial hospitalization program, manage his money, cook, clean, and attend meetings and appointments so long as he had reminders.  (A.R. 51, 54.)  Therefore, it was appropriate that the ALJ determined that Plaintiff was moderately limited in his ability to adapt or manage himself.  Finally, as to Plaintiff's marked limitation in interacting with others, the ALJ stated, and noted throughout the record, that Plaintiff has difficulty engaging in social activities and getting along with others.  (A.R. 51-55.)  However, the ALJ also noted that Plaintiff can spend time with different family members and will attend narcotics anonymous meetings.  (A.R. 51.)  Notably, this finding of a marked limitation in interacting with others goes *beyond* the findings of state agency consultants, Drs. Sadovnik and Encarnacion, who both determined that Plaintiff had only a moderate limitation. (A.R. 118-19, 149.)

In light of the foregoing, the Court finds that the ALJ's paragraph B determinations were based on substantial evidence on the record.

### D.  The ALJ's RFC Determination was Based on Substantial Evidence

Plaintiff argues that the ALJ failed to appropriately consider Plaintiff's physical and mental limitations in formulating his RFC.  Specifically, as to Plaintiff's physical limitations, Plaintiff asserts that, in light of his back pain, the ALJ did not provide a sufficient rationale for the given RFC limitations, and further, that the ALJ failed to consider Plaintiff's obesity as it affects his work-related functioning.  Pl. Br. at 24.  As to the mental aspects of the RFC, Plaintiff takes issue with the ALJ's finding that Plaintiff could occasionally interact with supervisors in light of Plaintiff's testimony that he fought with his mother constantly when working at her beauty shop. *Id.* at 25.  Plaintiff also disagrees that the state agency consultants' opinions were persuasive, because those opinions are from 2018, and thus, were not based on the complete record.  *Id.* at 26. I find that the ALJ's RFC determination is based on substantial evidence.

"[RFC] is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)."  *Burnett*, 220 F.3d at 121 (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see* 20 C.F.R. § 404.1545(a).  When a case is brought to an administrative hearing, the ALJ is charged with ultimately determining the claimant's RFC.  20 C.F.R. §§ 404.1527(e), 404.1546(c), 416.927(e), 416.946(c).  "[I]n making a residual functional capacity determination, the ALJ must consider all evidence before him[,]" and, "[a]lthough the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence."  *Burnett*, 220 F.3d at 121; *see Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  When assessing a claimant's RFC, an ALJ must consider all of the claimant's medically determinable impairments which are supported by the record, including those considered non-severe.  20 C.F.R. §§ 404.1545 (a)(2), 416.945 (a)(2); *see also Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005).  "Where the ALJ's findings of fact

are supported by substantial evidence, [district courts] are bound by those findings, even if [the courts] would have decided the factual inquiry differently." *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 292 (3rd Cir. 2012) (internal quotation marks and citation omitted).

The ALJ provided a sufficient rationale for Plaintiff's physical RFC limitations, which were based on, as noted *supra*, a thorough consideration of Plaintiff's back pain. The ALJ adequately discussed Plaintiff's subjective physical pain, as well as the relevant medical evidence, including medical testing, which showed degenerative changes in Plaintiff's back. (A.R. 51-55.) Furthermore, although state agency expert, Dr. Encarnacion, opined that Plaintiff has no exertional limitations, the ALJ only found this assessment to be partially persuasive. (A.R. 55.) The ALJ determined that the record supported greater physical restrictions because Plaintiff's "severe impairment of degenerative disc disease[], in combination with asthma and obesity," required a limitation to a reduced range of light work. (*Id.*) Regarding Plaintiff's obesity, Plaintiff failed to present any evidence of, and no medical doctor opined on, his obesity or its effect on his ability to work. Despite this lack of evidence, the ALJ considered Plaintiff's obesity-related testimony, and ultimately found his obesity to be a severe impairment that required greater physical limitations than those recommended by the state agency expert. (*See* A.R. 50. ("The claimant's obesity, while not stated by any physician to be disabling, was considered in terms of its possible effects on claimant's ability to work and ability to perform activities of daily living.")) As such, the ALJ's physical limitation decisions were based on substantial evidence.

Plaintiff's mental limitations were also based on substantial evidence. As with Plaintiff's physical impairments, the ALJ extensively reviewed Plaintiff's subjective statements and medical records related to his mental health. (A.R. 51-56.) The ALJ noted Plaintiff's testimony regarding his past drug use, mood swings, anxiety, and occasional social isolation. (A.R. 52.) The ALJ

documented Plaintiff's drug use, as well as Plaintiff's hospitalization due to drug use and various attempts at inpatient treatment and counseling for these substance abuse issues. (A.R. 52-54.) Furthermore, the ALJ discussed Plaintiff's doctors' mental health diagnoses, including depressive disorder, mixed personality disorder with narcissistic features, and bipolar disorder. (A.R. 52-54.) The ALJ also documented Plaintiff's treatment records in great detail, noting that at different times Plaintiff reported, agitation, anxiety, mood swings, mania, social isolation, panic attacks, racing thoughts, forgetfulness, impulsive behavior, and disorganized behavior. (A.R. 52-53.) The ALJ explained that medication compliance made Plaintiff better and less irritable with less mood swings, better sleep, and less anxiety. (A.R. 53.) Ultimately, the ALJ determined that while Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's "statements concerning intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (A.R. 55.) In so deciding, the ALJ noted Dr. Sadovnik's opinion as to Plaintiff's functional limitations was persuasive as it was consistent with the medical record, except that the ALJ determined that Plaintiff had a marked limitation as to interaction with others, as opposed to a moderate limitation as found by Dr. Sadovnik. (*Id.*) For this reason, the ALJ determined that Plaintiff "cannot work on a team or in tandem with coworkers and can never interact with the public, due to periods of aggressive and irritable behavior." (*Id.*)

Plaintiff argues that the ALJ should not have found Dr. Sadovnik's opinion persuasive because Dr. Sadovnik did not review the full record. That argument falls of its own weight. As a general matter, "[s]tate agent opinions merit significant consideration[.]" *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). And "because state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing

decision. The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it." *Id*. Indeed, only "where 'additional medical evidence is received that *in the opinion of the [ALJ]* . . . may change the State agency medical . . . consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listings,' is an update to the report required." *Id*. (quoting SSR 96-6p (July 2, 1996)). Here, the ALJ reached no such conclusion, and Plaintiff does not point to any significant medical treatment or records that would call into question the reliability of Dr. Sadvonik's opinion.

Further, Plaintiff asserts that, because he fought with his mother as an employee of her beauty salon, he cannot interact with supervisors and coworkers. Pl. Br. at 25. This argument is without merit. The fact that Plaintiff fought with his mother is not medical evidence that he cannot occasionally interact with coworkers. Indeed, in so deciding this limitation, the ALJ considered Plaintiff's testimony as to his work history, as well as the medical record, and went beyond the findings of the state agency consultants to find that Plaintiff had marked limitations in interacting with others. (A.R. 55.) Because of this limitation, and the voluminous medical evidence showing erratic and easily agitated behavior, including at work, the ALJ determined that while Plaintiff can occasionally interact with supervisors and coworkers, he can never work on a team or in tandem with others, nor interact with the public. (A.R. 52.) As such, I find that the ALJ's RFC determination is based on substantial evidence on the record.[5]

---

[5] Plaintiff, once again, points to the lack of analysis related to obesity in determining Plaintiff's RFC, but fails to cite to any record before the ALJ that the ALJ failed to discuss. Furthermore, Plaintiff fails to explain how consideration of this evidence warrants remand. On review, Plaintiff "bears the burden to demonstrate harm" and how the ALJ's "'error to which he points could have made any difference.'" *Holloman v. Comm'r of Soc. Sec.*, 639 Fed. App'x 810, 814 (3d Cir. 2016) (quoting *Shineski v. Sanders*, 556 U.S. 396, 409 (2009). Here, Plaintiff has not done so with respect to his obesity.

**E.  The ALJ's Step Five Decision is Supported by Substantial Evidence**

First, Plaintiff argues, without any citation, that the jobs cited by the VE are "not compatible" with the Plaintiff's RFC limitation that he can occasionally interact with supervisors and coworkers.  Pl. Br. at 28-29.  Second, Plaintiff, once again, arguing based solely on say so and without citation to any authority, requests that this Court disregard the VE's expert opinion and find that Plaintiff cannot perform the RFC's production demands[6] because jobs with these demands are "not how these jobs are performed in the real world" and that "[a]ny real world employee in such jobs does not have the option of going at their own pace through the day[.]"  Pl. Br. at 29.  Third, and still citing no evidence whatsoever, Plaintiff maintains that the job incidence numbers "bear[] no relationship to reality and [are] not supported by any evidence at all."  Pl. Br. at 33.

Here, the ALJ's step five determination was based on substantial evidence.  "A hypothetical question posed to a vocational expert must reflect *all* of a claimant's impairments." *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002) (internal quotations and citation omitted). When the hypothetical does "fairly set forth every credible limitation established by the physical evidence[,] . . . it can be relied upon as substantial evidence supporting the ALJ's conclusion that [Plaintiff] is not [] disabled."  *Plummer*, 186 F.3d at 431.  Moreover, a response from the VE to that hypothetical that there are, indeed, jobs in significant numbers in the national economy satisfies "the ALJ's burden of establishing that there are jobs available which the claimant can perform given [his or her] 'severe' disability."  *Id.*

---

[6] The RFC states that Plaintiff "is able to work in an environment where productivity is judged at the end of the day rather than the middle of the day." (A.R. 52.)

All of Plaintiffs arguments fail.  First, Plaintiff's argument that the VE's cited jobs are not compatible with Plaintiff's actual limitations in interacting with others concerns analysis under step four, not stop five.  Indeed, this Court already determined that substantial evidence supported the ALJ's finding that Plaintiff has marked limitations in interacting with others, and that to account for this limitation, the ALJ appropriately limited Plaintiff in the RFC to only occasional interaction with supervisors and coworkers, and no interaction with the public.  As such, any additional argument that Plaintiff has greater limitations than those already found by the ALJ is not appropriately raised at step five.  Second, Plaintiff's conclusory argument that production jobs, as described by the VE, are not how these jobs are supposedly performed in the "real world" also does not change the result.  Plaintiff's argument is not legal in nature.  Plaintiff does not contend that the ALJ asked an insufficient hypothetical failing to cover Plaintiff's RFC, which would be a valid basis to challenge the VE's findings.  Rather, Plaintiff seems to broadly dispute how production jobs are categorized by Social Security statutes and regulations, arguing that because these jobs are not based on "real world" considerations, they should not be used by the VE.  Importantly, Plaintiff's argument in this regard is not based on any actual facts, reports, expert opinions or otherwise, and therefore, his personal beliefs as to how these jobs may or may not be performed have no bearing on this Court's step five analysis as to whether the ALJ's decision was based on substantial evidence.  Third, Plaintiff appears to argue that the number of jobs stated by the VE to be available in the national economy bears no relation to the real number of jobs that exist, citing a report from "JobBrowser Pro" which Plaintiff claims shows the proper number of jobs that exist. [7]   The VE determined that there were 60,000 package sealer jobs, 100,000 labeler

---

[7] The Court has no knowledge of "JobBrowser Pro," and has no basis to substitute this supposed report for the statistics put forward by the DOT.

jobs, 100,000 packager jobs, and 90,000 garment folder jobs.  (A.R. 106.)  The ALJ is "entitled to use the expert's testimony in making his determination." *Young v. Astrue*, 519 Fed. App'x 769, 772 (3d Cir. 2013).  And while "there is no precise estimate for what constitutes 'significant numbers' of jobs under the Social Security Act[,]" the Third Circuit has found as little as 20,000 jobs available in the national economy is sufficient to support a finding that there were a significant number of jobs.  *Id*.  For this reason, the ALJ appropriately found that there were significant number of jobs in the national economy.

Therefore, I find that the ALJ's analysis at step five was based on substantial evidence.

## IV.    <u>CONCLUSION</u>

For the reasons set forth above, the ALJ's decision is **AFFIRMED**.  An appropriate Order shall follow.

Date:  May 26, 2022                              /s/ Freda L. Wolfson
                                                 Freda L. Wolfson
                                                 U.S. Chief District Judge